```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                    HARRISON DIVISION
```

ETTA JEAN CAVINESS                                      PLAINTIFF

    v.                  Case No. 07-3063

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                 DEFENDANT

## MEMORANDUM OPINION

      Plaintiff Etta Jean Caviness brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for period disability and disability insurance benefits under the provisions of Title II of the Social Security Act.

## I. Standard of Review

      This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the

court may not reverse the decision simply because substantial evidence exists to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).

## II.  Procedural Background

On January 22, 1997, Etta Jean Caviness applied for period disability and disability insurance benefits.  In her application, she alleged that she had been completely disabled since March 1, 1989, primarily due to back pain and depression.  Both initially and on reconsideration, her claim was denied due to lack of medical severity.

On October 22, 1997, Administrative Law Judge ("ALJ") Wayne Falkenstein conducted a hearing in order to review the claim.  On April 23, 1998, Judge Falkenstein issued an opinion wherein he upheld the denial of Ms. Caviness's claim.  This decision was upheld by the Appeals Council, making it the final decision of the Commissioner.  Thereafter, Claimant filed a civil action in the United States District Court for the Western District of Arkansas, and the Court upheld the denial of benefits.  On appeal, the United States Court of Appeals for the Eighth Circuit reversed and remanded the case for further development.

On remand and in a decision dated September 25, 2002, ALJ Thomas Bundy found that Claimant did not have a severe medical impairment and denied her claim for benefits.  After review by the

Appeals Counsel, the case was remanded for further development. A supplemental hearing was held on September 28, 2004. At this hearing, Claimant amended her onset date to December 1, 1994. ALJ Jimmy Puett heard the testimony of Ms. Caviness; her husband, Bobby Caviness; and a vocal expert (VE), Sarah Moore. In a May 27, 2005 decision, Judge Puett denied benefits. Specifically, the ALJ found that Claimant could perform various types of light work. This decision was upheld by the Appeals Council, making it the final decision of the Commissioner.

Ms. Caviness now seeks review of the Commissioner's decision. She contends that the ALJ erred in concluding that she was not disabled. Specifically, Ms. Caviness alleges the ALJ (1) improperly determined that she did not have a severe mental impairment prior to her date last insured; (2) should have supplemented the record with expert medical testimony to determine the onset date of her mental impairment; (3) improperly assessed her residual functional capacity; and (4) improperly assessed the credibility of her witnesses.

### III.  Evidence Presented

The evidence presented is discussed to the extent necessary to resolve the issues raised in the instant appeal.

#### A. Medical Evidence

1. On or about March 1, 1989, Etta Jean Caviness fell while working at the Stella Manor nursing home in Russellville,

Arkansas and injured her back. As a result, she quit her job.

2. Ms. Caviness's medical records indicate that in 1989, she was seen at the Millard-Henry Clinic in Russellville, Arkansas for a pregnancy.

3. On October 11, 1989, during a routine OB appointment, she complained that she had been experiencing lower back pain for two weeks and stated that she had fallen off a riding lawnmower.

4. Ms. Caviness's second child was delivered by caesarean section, and the pregnancy was normal. However, she suffered postpartum depression and received routine treatment, terminating on December 4, 1989.

5. On August 23, 1990, she was seen by Dr. Robert Ahrens, her primary treating physician, with complaints of low back pain and painful urination.

6. Later that year, she presented with similar symptoms and was treated conservatively.

7. On April 28, 1993, Ms. Caviness again saw Dr. Ahrens, complaining of chronic lower back pain. Dr. Ahrens prescribed Darvocet for the pain and Robaxin, a muscle relaxant, and ordered two weeks of bed rest. He determined that an MRI would be performed if Claimant's pain did not improve. An MRI was not conducted.

8. On August 8, 1995, Ms. Caviness was seen by Dr. Ahrens,

    complaining of swelling in her feet and legs and soreness in her back. She further reported difficulty sleeping and nervousness. Dr. Ahrens prescribed Amitriptyline, a sleep aid. This treatment was noted to be effective during an August 24, 1995 followup visit. It was further noted that Ms. Caviness was working cleaning homes.

9. On August 6, 1996, she saw Dr. Ahrens complaining of chest pains and swelling in her feet and legs. She expressed fear that she may have been suffering from congestive heart failure. Dr. Ahrens did not feel her symptoms were cardiac related.

10. On August 23, 1996, Ms. Caviness was taken to the emergency room at the Baxter County Regional Hospital with complaints of chest pain. She apparently suffered an anxiety attack. She was given Ativan and diagnosed with agoraphobia.

11. On November 4, 1996, Ms. Caviness was seen at Ozark Counseling Services and given a diagnostic impression of major depression. Her medical records contain no information indicating that her mental problems existed prior to December 31, 1994. However, she stated that she had been suffering from some mental problems for the past two years.

12. On December 2, 1996, Claimant underwent a psychiatric evaluation at Ozark Counseling Services and was diagnosed with adjustment disorder with mixed anxiety and depression by Dr.

Marion Stowers, M.D.

13. In a May 21, 1997 checkup, Ms. Caviness reported breakthrough panic attacks and indicated continued anxiety in her July 2, 1997 checkup.

14. On August 21, 1997, Dr. Victor Francis of Ozark Counseling Services assessed Ms. Caviness with generalized anxiety disorder and depressive disorder.

15. Dr. Francis completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) on October 16, 1997. Dr. Francis rated Ms. Caviness's ability to deal with the public, understand and carry out simple instructions and perform a job as "poor to none." She was given an assessment of psychotic disorder, depressive disorder, and generalized anxiety disorder. A similar assessment was made on December 11, 1997.

16. Through at least 2003, she continued to receive mental-health treatment from Ozark Counseling Services.

17. On December 31, 1998, Ms. Caviness underwent consultation at the North Arkansas Medical Center Pain Clinic, indicating a fifteen year history of low back pain. She was assessed with, among other things, panic anxiety disorder.

18. She was admitted to the North Arkansas Regional Medical Center on August 17, 1999 with diagnoses including anxiety. She was released on August 18, 1999.

19. On July 13, 2000 and on January 11, 2001, she was seen at the

Mountain Home Christian Clinic and assessed with depression.

20. From August 27 though August 31, 2001, Ms. Caviness was in the North Arkansas Regional Medical Center and was diagnosed with chest pain, anxiety, depression, and osteoarthritis.

21. She saw R. Stephen Austin, M.D. on January 24, 2002 and was assessed with depressive disorder, generalized anxiety disorder, and GAF=58. During her visit, she indicated that she had suffered panic attacks.

22. On April 23, 2002, Dr. Charles Klepper completed a residual functional capacity questionnaire and indicated that Ms. Caviness's depression, somatoform disorder, and anxiety affected her physical condition.

23. On April 25, 2002, Dr. Austin completed a Mental Residual Functional Capacity Questionnaire in which he noted that "I believe [Claimant's] condition was substantially as portrayed herein prior to 12-31-94 her last date insured. See intake evaluation 11/4/1996."

24. On September 11, 2003, Ms. Caviness was given an impression of anxiety at the Mountain Home Christian Clinic.

**B. Activities**

25. Ms. Caviness quit her job as a nurse's aid at the Stella Manor Nursing Home on or about March 1, 1989.

26. Since leaving Stella Manor, she has worked as a housekeeper five hours per day two to three days per weeks and as a sitter

      for the elderly. She has also worked cleaning the Church of the Rock.

27. She states that her back pain limits her ability to stand to no more than ten minutes and her ability to sit to no more than thirty minutes.

28. In the questionnaire that she completed for her attorney, Ms. Caviness stated that she retained the ability to drive, go grocery shopping, go to church, and visit friends and family.

**IV. Discussion**

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents the claimant from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). When determining the presence of a disability, the Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. These steps are: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether

the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)-(f). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520. A claimant's failure at any step in the evaluation process leads to the finding that the claimant is not disabled.

**A. Insured status**

In order to have insured status under the Social Security Act, an individual must have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Ms. Caviness last met this requirement on December 31, 1994. Accordingly, the overarching issue in this case is the question of whether Claimant was disabled during the relevant time period of December 1, 1994, her alleged onset date of disability, through December 31, 1994, the last date she had insured status under Title II of the Act.

Ms. Caviness contends that the ALJ incorrectly determined that she did not have a severe mental impairment prior to her date last insured. An impairment is severe if it limits the claimant's ability to do basic work activities. 20 C.F.R. § 404.1521(a). In order for a claimant to qualify for disability benefits, she must prove that, on or before the expiration of her insured status, she

was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984). The medical evidence of claimant's condition subsequent to the expiration of her insured status is relevant only to the extent it helps establish her condition before the expiration. *Id.* at 1169. Accordingly, Ms. Caviness bears the burden of establishing that she suffered from a severe mental impairment on or before the expiration of her insured status. Substantial evidence supports the ALJ's determination that she did not have a severe mental impairment.

 The evidence before the ALJ demonstrates that Ms. Caviness's mental health problems developed after December 31, 1994. The evidence shows that on August 8, 1995, Ms. Caviness was seen by Dr. Ahrens and complained of nervousness and difficulty sleeping. It shows that approximately one year later, she was taken to the emergency room at the Baxter County Regional Hospital because she had apparently suffered an anxiety attack; she was diagnosed with agoraphobia. Further, on November 4, 1996, Ms. Caviness was seen at Ozark Counseling Services and given a diagnostic impression of major depression. After her consultation with Ozark Counseling, Ms. Caviness received regular and continued treatment for her mental impairment.

There can be no doubt from the evidence presented to the ALJ that Ms. Caviness currently suffers from mental impairments such as depression and anxiety. However, the inquiry here is whether the same can be said for the period between December 1, 1994 and December 31, 1994, and it cannot. The record is virtually devoid of any evidence either (1) that Ms. Caviness actually suffered a severe mental impairment prior to December 31, 1994 or (2) creating a reasonable inference that her onset date should relate back to the December 1, 1994 through December 31, 1994 period.

The exception to this conclusion appears at two places in the record. First, when Ms. Caviness was seen by Ozark Counseling Services on November 4, 1996, she stated that she had been suffering from some mental problems for the past two years. Second, in a Mental Residual Functional Capacity Questionnaire, Dr. Austin noted that "I believe [claimant's] condition was substantially as portrayed herein prior to 12-31-94 her last date insured. See intake evaluation 11/4/1996." This questionnaire was not completed until April 2002, and therefore, its probative value is questionable. "The absence of any evidence of ongoing counseling or psychiatric treatment or of deterioration or change in [Plaintiff]'s mental capabilities disfavors a finding of disability." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). Accordingly, even in light of these two indications of mental impairment prior to December 31, 1994, the decision of the ALJ that

Ms. Caviness did not suffer from a severe mental impairment is supported by substantial evidence.

In a related argument, Ms. Caviness asserts that the ALJ should have supplemented the record with expert medical testimony to determine the onset date of her alleged mental impairment. When the onset date must be inferred from other evidence presented to the ALJ, he or she may be required to call on the services of a medical expert in order to properly determine when the claimant began to suffer from an impairment. The ALJ's duty to supplement the record with expert testimony is triggered when there is a legitimate medical basis in the record for the inference of an onset date preceding that supported by documentary evidence and occurring on or before the expiration of the claimant's insured status. SSR 83-20. "An ALJ is required to obtain additional medical evidence if the existing medical evidence is not a sufficient basis for a decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994).

As discussed, there is substantial evidence supporting the ALJ's determination that Ms. Caviness did not have a severe mental impairment prior to December 31, 1994. As such, the medical evidence presented to the ALJ provided a sufficient basis for his conclusion that Ms. Caviness did not have a severe mental impairment at the expiration of her insured status, and therefore, the ALJ was not required to supplement the record with expert

testimony. In short, Ms. Caviness simply did not carry her burden of proof in creating an inference for an onset date prior to December 31, 1994.

**B. Residual Functional Capacity**

Ms. Caviness claims the ALJ improperly assessed her residual functional capacity ("RFC") by failing to consider her mental impairment. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

In the present case, substantial evidence supports the ALJ's determination that Ms. Caviness did not suffer from a severe mental impairment prior to December 31, 1994. As such, the relevant evidence to be considered by the ALJ in assessing the RFC of Ms. Caviness did not encompass her alleged mental impairments. "The hypothetical question is sufficient if it sets forth the

impairments which the ALJ accepts as true." *Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988). Since the ALJ accepted Ms. Caviness's physical impairment as true but adequately discredited her mental impairment, he properly assessed her RFC by considering only Ms. Caviness's physical impairment.

**C. Witness Credibility**

Finally, Ms. Caviness asserts that the ALJ improperly assessed the credibility of her witnesses. In disability determinations, credibility assessments are the province of the ALJ. *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir. 1992). This Court will not substitute its judgment for that of the trier of fact, *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996), nor will it disturb the decision of any ALJ who seriously considers, but for good reason explicitly discredits, a claimant's testimony of disabling pain. *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit observed, "[o]ur touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).

In *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), the Eighth Circuit Court of Appeals set out a list of factors that

an ALJ should consider when evaluating a claimant's subjective complaints of impairment. Those factors are: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Id*. The ALJ adequately evaluated the factors set forth in *Polaski,* and the Court concludes that there is substantial evidence supporting the ALJ's determination that Ms. Caviness's complaints are not fully credible.

The ALJ discounted Ms. Caviness's subjective complaints of mental impairment based on her lack of medical treatment and the extent of her daily activities. Specifically, the ALJ noted that the first sign of mental impairment contained in Claimant's records appeared on August 8, 1995 when Ms. Caviness was seen by Dr. Ahrens and reported difficulty sleeping and nervousness. Dr. Ahrens prescribed Amitriptyline, a sleep aid. This treatment was noted to be effective during an August 24, 1995 followup visit. In addition, Ms. Caviness makes much of the fact that on August 23, 1996, she was taken to the emergency room at the Baxter County Regional Hospital because she had apparently suffered an anxiety attack and was diagnosed with agoraphobia. Because agoraphobia evidences a fear of public or unfamiliar places, Claimant cites to this diagnosis as the reason that she did not seek treatment for her mental impairment at an earlier time. However, this argument

is unconvincing in light of Ms. Caviness's daily activities.

The record demonstrates that Ms. Caviness quit her job as a nurse's aid at the Stella Manor Nursing Home on or about March 1, 1989. After leaving Stella Manor and until the expiration of her insured status, she worked as a housekeeper five hours per day two to three days per weeks and as a sitter for the elderly. She also worked cleaning the Church of the Rock. Finally, in the questionnaire that she completed for her attorney, Ms. Caviness stated that she retained the ability to drive, go grocery shopping, go to church, and visit friends and family.

In light of Claimant's expansive activities, her reliance on agoraphobia as her reason for not seeking medical treatment seems misplaced. Further, these activities are inconsistent with a disabling mental condition. "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). Accordingly, the ALJ's determination of Ms. Caviness's credibility is supported by substantial evidence.

Based on the ALJ's determination that Ms. Caviness's subjective complaints of mental impairment prior to December 31, 1994 are not credible, the ALJ did not err in discounting the testimony of Bobby Caviness. His testimony indicating that Ms. Caviness had suffered from depression for more than ten years was

not supported by other evidence. Further, the ALJ found that Mr. Caviness's testimony was largely driven by his desire to see his wife receive benefits. As such, the ALJ's credibility determination will not be disturbed. Assessing the credibility of witnesses is within the purview of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996).

**V. Conclusion**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 24th day of February 2009.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE